**[J-32-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| OFFICE OF DISCIPLINARY COUNSEL, | : | No. 2914 DD3 |
| | : | |
| Petitioner | : | No. 173 DB 2019 |
| | : | Attorney Registration No. 87542 |
| | : | (Lackawanna County) |
| v. | : | |
| | : | ARGUED: April 10, 2024 |
| | : | |
| MICHAEL JOHN PISANCHYN JR., | : | |
| | : | |
| Respondent | : | |

**OPINION**

**JUSTICE DONOHUE**                    **DECIDED: OCTOBER 24, 2024**

Respondent, Michael Pisanchyn ("Pisanchyn"), challenges the recommendation of the Disciplinary Board that he should be suspended for ninety days, based on the preparation and presentation of a fee petition for attorneys' fees in a federal district court. Among his several claims,[1] Pisanchyn challenges the application of Pennsylvania Rule of Professional Conduct 1.5(a)[2] to his conduct. Although the Office of Disciplinary Counsel ("ODC") charged Pisanchyn with violations of seven Rules of Professional Conduct, the Disciplinary Board only found Pisanchyn in violation of Rule 1.5(a). While neither the Hearing Committee nor the Disciplinary Board found Pisanchyn in violation of

---

[1] Given our ultimate conclusion to dismiss the Petition for Discipline in this matter, we do not address Pisanchyn's other challenges.

[2] Pennsylvania Rule of Professional Conduct 1.5 provides, in relevant part: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Pa.R.P.C. 1.5(a).

Rule 8.4(d),[3] the Hearing Committee expressed that further guidance would be helpful on the rule's application. We ordered the parties to provide argument on the application of that Rule under the circumstances of this appeal. Pursuant to our review, Rules 1.5(a) and 8.4(d) are inapplicable under the facts presented. Accordingly, the Petition for Discipline is dismissed.

## I.    Background

Pisanchyn was admitted to the practice of law in Pennsylvania in 2001. He owns, operates, and manages a personal injury law firm, The Pisanchyn Law Firm. On August 26, 2009, Bernie Clemens sustained injuries in a motor vehicle accident. New York Central Mutual Insurance Company ("NYCM") insured the car in which Clemens was traveling. On March 11, 2010, Clemens retained Pisanchyn's firm to represent him and his wife with respect to a claim against NYCM for underinsured motorist ("UIM") benefits. In August 2013, Pisanchyn's firm filed a civil suit in Monroe County, Pennsylvania, on behalf of Clemens and his wife ("plaintiffs"), against NYCM asserting both a contractual UIM claim, and a bad faith claim under Pennsylvania's bad faith statute, 42 Pa.C.S. § 8371. The case was removed to the United States District Court for the Middle District of Pennsylvania where it was assigned to Judge Malachy E. Mannion.

Pisanchyn was the supervising attorney on the case and lead counsel at trial. Five other attorneys at Pisanchyn's law firm assisted in the litigation of the lawsuit, including Attorney Marsha Lee Albright ("Albright"). Albright was assigned primary responsibility for the lawsuit and entered her appearance on the federal docket on October 1, 2013.

Prior to trial, the parties settled the UIM claim for $25,000, but the bad faith claim proceeded to a week-long jury trial. The jury entered a verdict in favor of the plaintiffs in

---

[3]    Pennsylvania Rule of Professional Conduct 8.4 provides, in relevant part: "It is professional misconduct for a lawyer to … engage in conduct that is prejudicial to the administration of justice[.]"  Pa.R.P.C. 8.4(d).

the amount of $100,000 in damages. Given the finding of bad faith in favor of the insureds, the court also had discretion to award attorneys' fees, costs, and interest against NYCM. 42 Pa.C.S. § 8371. Pisanchyn had never prepared a fee petition, and he instructed Albright to seek advice from another attorney who regularly filed such petitions. Apparently, that attorney informed Albright that the presentation of a fee petition was straightforward, provided a sample petition, and indicated that The Pisanchyn Law Firm should be able to prepare the petition itself. Notably, neither Pisanchyn, nor any other attorney at his firm, had kept any time records for the federal litigation, such that, for purposes of the fee petition, the records had to be created after the fact. On November 20, 2015, Pisanchyn submitted a petition for attorneys' fees, interests and costs, along with a brief in support on behalf of the plaintiffs, requesting an award of $946,526.43 for fees and costs and $175,630 in interest, for a total of $1,122,156.43. Petition for Attorneys' Fees, Interests and Costs, 11/20/2015. NYCM filed a brief in opposition, and shortly thereafter, Pisanchyn filed a reply brief on behalf of the plaintiffs.

Given the disparity in the fees requested compared to the $125,000 obtained for the plaintiffs, Judge Mannion directed Pisanchyn to: submit a copy of the fee agreement entered into with the plaintiffs; submit a sworn verification from each attorney involved that the fees requested were accurate and reflected necessary services performed on behalf of the plaintiffs; and to maintain any time records for any client covering the period of time relevant to the plaintiffs' case. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 264 F.Supp.3d 618, 627 (M.D. Pa. 2017). On December 21, 2015, Albright delivered several items to the court for in camera inspection, including an undated contingent fee agreement entered into between the plaintiffs and The Pisanchyn Law Firm; the sworn verifications; and two sets of time logs, one for each of the plaintiffs' underlying claims. *Id.*

Following an evidentiary hearing, Judge Mannion denied the request for attorneys' fees in its entirety because it was "outrageous and abusively excessive."[4] *Clemens*, 264 F.Supp.3d at 658. The court reached this conclusion after finding that the petition contained duplicative, vague, unnecessary, and excessive entries. *Id.* at 635. The petition also claimed attorneys' fees for clerical functions, including file maintenance and document management. *Id.* at 639. The court noted that Pisanchyn charged the same hourly rate for all attorneys without providing any supporting evidence, such as usual billing rates or descriptions of experience for each of the attorneys, which impeded its ability to determine the reasonableness of the hourly fees. *Id.* at 662-65 & n.59. The court determined that only about 13% of the claimed attorneys' fees were supported by the evidence, making the fee petition "anything but a good [] faith representation of [the attorneys'] actual billing rate and the hours reasonably expended on this case." *Id.* at 666-67. In addition to denying the fee petition in its entirety, the court directed that a copy of its opinion be served on the Pennsylvania Chief Disciplinary Counsel. *Id.* at 667. Pisanchyn self-reported the opinion to ODC on the same day of its issuance.

On appeal, the Third Circuit affirmed, reasoning that district courts have the discretion to deny a fee petition in its entirety when the requested amount is "outrageously excessive" under the circumstances. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396 (3d Cir. 2018). Explaining that counsel must make a good faith effort to avoid claiming fees for hours that are excessive, redundant, or otherwise unnecessary, the Third Circuit concluded that the district court provided a thorough explanation in its one-hundred-page opinion of how Pisanchyn failed to fulfill this duty, which justified the denial of the fee request. *See id.* (observing that the submission of a fee petition is not the

---

[4] The federal district court concluded that plaintiffs were entitled to recover interest on the $25,000 UIM award, thus it awarded interest in the amount of $4,986.58. *Clemens*, 264 F.Supp.3d at 629.

"opening bid in the quest for an award … . Rather, it is the duty of the requesting party to make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary").

On October 1, 2019, ODC filed a Petition for Discipline charging Respondent with violating Pennsylvania Rules of Professional Conduct 1.1, 1.5(a), 5.1(a), 5.1(b), 5.1(c)(1), 5.1(c)(2), and 8.4(d).[5]  Petition for Discipline, 10/1/2019.  The Disciplinary Board

---

[5]  As summarized by the Hearing Committee, the Rules are as follows:

> A. Pa.R.P.C. 1.1: A lawyer shall provide competent representation to a client;
>
> B. Pa.R.P.C. 1.5(a): A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee;
>
> C. Pa.R.P.C. 5.1(a): A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct;
>
> D. Pa.R.P.C. 5.1(b): A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct;
>
> E. Pa.R.P.C. 5.1(c)(1): A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if ... the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved;
>
> F. Pa.R.P.C. 5.1(c)(2): A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if ... the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action; and

(continued…)

appointed a Hearing Committee to decide the matter, and prior to the hearing, ODC filed a motion to apply the doctrine of offensive collateral estoppel based on the federal court opinions so that it would be able to satisfy its burden of proof as to all of the charged violations without independent evidence. The Hearing Committee denied the motion and held disciplinary hearings on August 24, August 25, and September 9, 2020. On February 1, 2021, the Hearing Committee filed its report, wherein it recommended no discipline be imposed because ODC "failed to establish a prima facie case of at least one violation" of the rules it charged Pisanchyn with violating. Hearing Committee's Report, 2/1/2021, at 3.

With respect to the fee petition, the Hearing Committee found that "[w]hile the testimony at the hearing … supported the conclusion that [Pisanchyn] and the Firm actually spent the time and effort detailed in the fee petition," it was troubled by Pisanchyn's business practices. *Id.* at 12-13. Namely, Pisanchyn and his law firm "spent an enormous amount of time and expense on a relatively small recovery" without measuring its effort "in a commercially normal fashion[.]" *Id.* Nonetheless, the Hearing Committee found that Pisanchyn did not violate any of the rules charged, including Rules 1.5(a) and 8.4(d). *Id.* at 13. Regarding Rule 1.5(a), it found that "the amount requested reflected actual time spent in preparing the case, and may even have been on the conservative side[.]" *Id.* at 16. As to Rule 8.4(d), the Hearing Committee found it to be a "catch-all Rule" that may apply where several other violations are found, but as no other violation was found, the Hearing Committee found no Rule 8.4(d) violation occurred. *Id.* at 18. Ultimately, the Hearing Committee stated that "greater guidance on the elements"

---

G. Pa.R.P.C. 8.4(d): It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice.

Hearing Committee's Report, 2/1/2021, at 2-3.

of Rule 8.4(d) would be helpful. *Id.* Accordingly, the Hearing Committee recommended that no discipline be imposed. *Id.*

Both ODC and Pisanchyn filed a brief on exceptions to the Hearing Committee's decision.[6] On April 16, 2021, the Disciplinary Board issued an order that stated, without further explanation, that Pisanchyn violated Rule 1.5(a) and remanded to the Hearing Committee for a new hearing to determine the appropriate discipline. Disciplinary Board Order, 4/16/2021. The Hearing Committee conducted another hearing and issued supplemental reports that recommended a six-month suspension. Hearing Committee Supplemental Report, 12/27/2021; Hearing Committee Second Supplemental Report, 5/31/2022. Pisanchyn filed his brief on exceptions to the reports and requested discipline from the Disciplinary Board that was no greater than an informal admonition or private reprimand. Further, he requested oral argument before the Disciplinary Board.

A three-member panel of the Disciplinary Board held oral argument, and it filed a report on September 6, 2022. Therein, the Disciplinary Board recommended a ninety-day suspension. The Disciplinary Board first explained its reasoning for finding a violation of Rule 1.5(a). According to the Disciplinary Board, the Hearing Committee should not have permitted Pisanchyn to relitigate the issue of whether the fee petition was excessive. Instead, the doctrine of collateral estoppel applied to the district court's decision and established the excessiveness of the fee petition. In the Disciplinary Board's view, application of the doctrine was even more compelling under the circumstances presented, "because the Third Circuit affirmed and supported the trial court's conclusive findings." Disciplinary Board's Report and Recommendations, 9/6/2022, at 21. The Disciplinary

---

[6] Pisanchyn's brief on exceptions was based solely on his objection to the Hearing Committee's findings on uncharged conduct which was included in its Report. Respondent's Brief on Exceptions to Specific Statements in the Report of the Hearing Committee, 2/23/2021.

Board cited other disciplinary rulings where violations of Rule 1.5(a) were based on excessive fee petitions. *Id.* at 21-22 (citing *ODC v. Pollick*, No. 5 DB 2018 (finding that an attorney's submission of a fee petition in federal court, which was denied as excessive and resulted in sanctions of $25,000, violated Rule 1.5(a)); *see also In re Green*, 11 P.3d 1078 (Colo. 2000) (finding a violation of Colorado RPC 1.5(a) where some entries in a fee petition submitted to a court were deemed to be excessive); *In re Conduct of McGraw*, 414 P.3d 841 (Or. 2018) (finding that an attorney violated RPC 1.5(a) by submitting petition for fees to court in estate conservatorship matter that contained "many errors" and "mischaracterization of work that should properly be billed as Fiduciary Time but was actually billed as Attorney Time")).

The Disciplinary Board then reviewed the other rule violations that had been charged, concluding that none of them had been proven by "clear and satisfactory evidence." Disciplinary Board's Report and Recommendations, 9/6/2022, at 16-17. Specifically regarding Rule 8.4(d), the Disciplinary Board deemed ODC's evidence was insufficient but offered no further explanation. *Id.* at 23-24. After considering aggravating and mitigating factors, the Disciplinary Board recommended a ninety-day suspension. *Id.* at 39.

On October 7, 2022, Respondent filed a Petition for Review with this Court and requested oral argument regarding, as relevant to our disposition, whether Rule 1.5(a) applies under the circumstances presented by this case. By Per Curiam Order dated January 27, 2023, we granted Pisanchyn's petition and, in addition to the questions for which Pisanchyn sought review, we ordered the parties to present argument on the application of Rule 8.4(d) to the conduct at issue. Order, No. 173 DB 2019, 1/27/2023.[7]

---

[7] Specifically, that per curiam order provided:

(continued…)

## II. Parties' Arguments

**Pisanchyn's Arguments**

With respect to Rule 1.5(a), Pisanchyn argues that it does not contemplate a fee petition situation. In his view, the rule is designed to protect the client and does not address situations in which discretionary attorneys' fees are sought. Pisanchyn's Brief at 44. He argues that the cases discussing fee petitions relied upon by ODC are unpersuasive, because whether Rule 1.5(a) governed fee petitions at all was neither raised nor decided in any of them. *Id.* at 45. Consequently, Pisanchyn contends that these cases cannot be considered binding or precedential. *Id.*

As for Rule 8.4(d), Pisanchyn argues that "the interference with the administration of justice usually involves either abuse of process through meritless litigation, undermining proceedings through deception, or incompetence that prejudices a result." *Id.* at 56. To him, "[f]iling a fee petition in good-faith, no matter how little the court liked it, does not rise to the level of a violation of Rule 8.4." *Id.* at 57. Moreover, he asserts, that "the filing of the petition itself was consistent with the law, and the litigation of the issues raised by the petition were not so far out of the normal course of events to violate the Rule." *Id.*

---

**AND NOW**, this 27th day of January, 2023, upon consideration of the Petition for Review, the Prothonotary is directed to establish a briefing schedule and list the matter for oral argument. In addition to the objections identified in the Petition for Review, the parties are ordered to provide argument as to whether Respondent's conduct violated Rule 8.4(d) of the Pennsylvania Rules of Professional Conduct. The Application for Relief to Extend Protective Orders is granted pending a final order in this matter.

Order, No. 173 DB 2019, 1/27/2023.

**ODC's Arguments**

ODC contends that Pisanchyn should be found in violation of Rule 1.5(a). ODC's Brief at 36-37. ODC argues that Rule 1.5(a) does apply to fee-shifting petitions, because the language of the rule provides that "a lawyer shall not … charge, or collect an illegal or clearly excessive fee." *Id.* at 39. To ODC, the rule applies to clients and to funds received from third parties, as well. *Id.* at 40-43. Further, it highlights previous disciplinary matters where the Disciplinary Board imposed discipline for fee petitions that "lacked specificity [and] were excessive." *Id.* at 41 (citing *ODC v. Pollick*, No. 5 DB 2018 (D. Bd. Order, 2/8/2018). ODC criticizes Pisanchyn's failure to identify "any cases in which a court found Rule 1.5 inapplicable to a fee petition," from Pennsylvania or any other jurisdiction. *Id.* at 41-42.

ODC also argues that Pisanchyn violated Rule 8.4(d). *Id.* at 58. In support of that position, it explains that Pisanchyn "submitted and litigated an unsupported, vague, and poorly reasoned fee petition, even though the District Court gave him the opportunity to supplement it." *Id.* To ODC, this conduct set in motion a series of events that significantly inconvenienced the court, wasted limited judicial resources, and negatively impacted the administration of justice. *Id.* at 58-59. It believes that this is "the essence of an 8.4(d) violation." *Id.* at 60. Moreover, ODC believes that the rationale employed by the Third Circuit to deny all fees was based on precisely the type of attorney misconduct contemplated by Rule 8.4(d), i.e., "a lawyer's obligation to the legal system and the resultant prejudice to the court when the lawyer fails to meet that obligation." *Id.* In particular, it highlights the Third Circuit's statement that if the District Court merely reduced Respondent's outrageous fee petition, other "claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first

place." *Id.* (citing *Clemens*, 903 F.3d at 403). ODC argues that, in filing this "deficient, grossly excessive fee petition with the court," Pisanchyn violated Rule 8.4(d). ODC's Brief at 62.

## III. Analysis

Our standard of review in all disciplinary matters is de novo; however, the findings of the Hearing Committee and the Disciplinary Board are "guidelines for judging the credibility of witnesses and should be given substantial deference." *ODC v. Altman*, 228 A.3d 508, 516 (Pa. 2020) (citing *ODC v. Pozonsky*, 177 A.3d 830, 838 (Pa. 2018)). As to whether Pisanchyn violated Rule 1.5(a), we assume that the relevant facts alleged by ODC regarding the fee petition filed by Pisanchyn on behalf of his clients to recover attorneys' fees from a third party were established with sufficient evidence.

### A. Rule 1.5(a)

When interpreting the Rules of Professional Conduct, our object is to "ascertain and effectuate the intention of [] [this] Court" and "[e]very rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.J.A. 108(a)-(b).

Chapter One of the Pennsylvania Rules of Professional Conduct governs the "client-lawyer relationship." *See* Pa.R.P.C. Ch. One. Within this chapter, Rule 1.5(a) provides:

> (a) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. The factors to be considered in determining the propriety of a fee include the following:
>
> (1) whether the fee is fixed or contingent;
>
> (2) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(3) the likelihood, **if apparent to the client**, that the acceptance of the particular employment will preclude other employment by the lawyer;

(4) the fee customarily charged in the locality for similar legal services;

(5) the amount involved and the results obtained;

(6) the time limitations imposed **by the client** or by the circumstances;

(7) the nature and length of the professional relationship **with the client**; and

(8) the experience, reputation, and ability of the lawyer or lawyers performing the services.

Pa.R.P.C. 1.5(a)(1)-(8) (emphasis added).

We begin with the first sentence of Rule 1.5(a): "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Pa.R.P.C. 1.5(a). When interpreting statutory language, we do so "not in isolation, but with reference to the context in which it appears[,]" and we extend the same rationale to interpreting our own rules. *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016); *see also In re Lackawanna Cnty.*, 212 A.3d 1, 6-7 (Pa. 2019) ("[T]o the extent we must engage in statutory interpretation of our own procedural rules, we apply conventional interpretative principles."). The context for Rule 1.5 is established by its placement in Chapter One of the Rules of Professional Conduct, which governs the "client-lawyer relationship." The first sentence of the Rule sets the general prohibition against excessive fees. The remainder of Rule 1.5(a) lists eight factors "to be considered in determining the propriety of a fee … [,]" three of which specifically refer to "the client." Pa.R.C.P. 1.5(a)(3), (6), (7). We must consider all of the factors enumerated in Rule 1.5(a). The plain language of

Rule 1.5(a) makes clear that its aim is to protect clients from being charged clearly excessive fees.

Further, subsections (b), (c), and (e) of Rule 1.5 also refer to "the client." *See* Pa.R.P.C. 1.5(b) ("When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client[.]"); Pa.R.P.C. 1.5(c) ("Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination[.]"); Pa.R.P.C. 1.5(e) ("A lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm unless: (1) the client is advised of and does not object to the participation of all the lawyers involved; and, (2) the total fee of the lawyers is not illegal or clearly excessive for all legal services they rendered to the client."). Additionally, several of the comments to Rule 1.5 refer to a lawyer's conduct towards their client. *See* Pa.R.P.C. 1.5, cmts. 1, 3-5. When read in its entirety—and in the larger context of Chapter One governing the lawyer-client relationship—it becomes apparent that Rule 1.5(a) governs fee agreements between the attorney and the client, charges made to a client by the attorney and collection of fees by an attorney from a client.

The fee petition at the center of this appeal is not encompassed by Rule 1.5(a) because the petition did not seek to charge or collect a fee from his client. Pursuant to Pennsylvania's bad faith statute, "if the court finds that the insurer has acted in bad faith toward the insured, the court may … [a]ssess court costs and attorney fees against the insurer." 42 Pa.C.S. § 8371. Section 8371 is a fee-shifting statute which permits an insured to recover attorneys' fees from the insurer. *Id.* The purpose of awarding attorneys' fees in a bad faith claim is to put the insured back in the position she was in prior to paying an attorney to pursue the underlying claim. *Klinger v. State Farm Mut.*

*Auto. Ins. Co.*, 115 F.3d 230, 236 (3d Cir. 1997). Pisanchyn's clients, the insureds, not Pisanchyn, sought to recover attorneys' fees from the insurance carrier, NYCM. The petition prepared by Pisanchyn was intended to advance his clients' claim against the insurer. It did not represent an attempt to charge or collect fees from the client.

Moreover, we are not persuaded by ODC's reliance on *ODC v. Pollick,* No. 5 DB 2018 (D. Bd. Order 2/8/2018), in support of its argument that Rule 1.5(a) applies to fee petitions. In *Pollick*, the Disciplinary Board issued a public reprimand explaining that Pollick violated Rule 1.5(a) by submitting a grossly excessive fee petition in a federal case advancing equal protection claims. The Disciplinary Board did not perform any analysis of Rule 1.5(a) to support the conclusion that it was applicable in the fee petition context and this determination was not appealed to this Court. More importantly, and obviously, the Disciplinary Board's report does not bind this Court.[8] *ODC v. Cappuccio*, 48 A.3d 1231, 1236 (Pa. 2012).

Lastly, even though we hold that Rule 1.5(a) does not apply when an attorney files a fee petition seeking to recover from an adverse party on behalf of a client, this does not—contrary to ODC's suggestion—provide an invitation for parties to exploit their opponent. ODC's Brief at 40. When presented with a fee petition in a bad faith claim, trial courts are required to determine whether the fee being sought is reasonable. *Birth Ctr. v. St. Paul Companies, Inc.*, 727 A.2d 1144, 1160 (Pa. Super. 1999), *aff'd*, 787 A.2d 376 (Pa. 2001) (quoting Pa.R.C.P. 1717). "The [trial] court's ultimate responsibility is the

---

[8] We are also not persuaded by ODC's reliance on other state courts' interpretations of their own Rules of Professional Conduct. *See In Re Green*, 11 P.3d 1078 (Colo. 2000) (attorney violated Colorado's Rule 1.5(a) because some entries in fee petition were found "vague" and "excessive"); *In re Conduct of McGraw*, 362 Or. 667 (Or. 2018) (attorney violated Oregon's Rule 1.5(a) by submitting an "excessive" fee petition in an estate conservatorship matter). Neither *Green* nor *McGraw* focused on whether their own versions of Rule 1.5(a) applied to a fee petition seeking to recover from an opposing party. These matters simply addressed whether the fee charged was unreasonable, which is distinct from the threshold determination we are faced with here.

award of a 'reasonable' fee."  *Id.*  Further, the decision to award attorneys' fees upon a finding of bad faith is wholly within the discretion of the trial court.  *Id.*

The underlying bad faith case illustrates this process, as the federal district court denied Pisanchyn's fee petition in its entirety pursuant to the factors outlined in our Rules of Civil Procedure.[9]  *See Clemens*, 264 F. Supp. 3d at 666.  The requirement that trial courts examine the reasonableness of attorneys' fees as well as their authority to reduce or refuse to award attorneys' fees, are the backstops against excessive fee petitions, not Rule 1.5(a).

Rule 1.5(a) serves an important role in ensuring that attorneys do not enter into an agreement for, charge or collect an illegal or clearly excessive fee from their clients. Based on the language of the rule and its placement within the Rules of Professional Conduct, we hold that Rule 1.5(a) does not apply where an attorney files a fee petition seeking to recover fees on behalf of his client from an adverse party.

**B.  Rule 8.4(d)**

The Hearing Committee opined that Rule 8.4(d) "appears to be a catch-all Rule that may properly be applied where numerous other violations are found … . If an attorney is found to have violated several Rules of Professional Conduct, it can be persuasively argued that the attorney also prejudiced the administration of justice."  Hearing Committee's Report, 2/1/2021, at 18.  Because it found that ODC had not established any other rule violations at that time, it surmised that there was no violation of Rule 8.4(d).  *Id.* However, the Hearing Committee expressed its belief that clarification of the elements of a violation would be beneficial.  The Disciplinary Board likewise found no violation, for the

---

[9]  While the federal district court relied upon the "lodestar method" to calculate attorneys' fees in this matter (i.e., a burden-shifting framework to determine the reasonableness of the fees), it recognized that Rule 1717's factors—though not separately addressed—were integrated into its discussion of the lodestar calculation.  *Clemens*, 264 F.Supp.3d at 631 n.16.

reason that ODC's evidence was insufficient to establish a violation of Rule 8.4(d). It did not explain in what respect the evidence was insufficient.

ODC did not challenge the dismissal of the Rule 8.4(d) charges until this Court requested argument on this particular issue. We requested argument on whether Pisanchyn's conduct violated the Rule.[10]

Based on our interpretation of Rule 8.4(d) in the context of the entirety of Rule 8.4 and our review of our case law interpreting it, as well as the arguments of the parties, we conclude that under the facts presented, there is no violation of Rule 8.4(d).

Rule 8.4. provides:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;[11]
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation, except that a lawyer may advise, direct, or supervise others, including clients, law enforcement officers, and investigators, who participate in lawful investigative activities;
>
> (d) engage in conduct that is prejudicial to the administration of justice;
>
> (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

---

[10]  *See* supra note 7.

[11]  As the comments to the Rule explains, "a lawyer should be professionally answerable only for [criminal] offenses that indicate lack of those characteristics relevant to law practice."  Pa.R.P.C. 8.4, cmt. 2.

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) in the practice of law, knowingly engage in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude advice or advocacy consistent with these Rules.

Pa.R.P.C. 8.4.

Our focus is specifically on Rule 8.4(d). Pa.R.P.C. 8.4(d) ("It is professional misconduct for a lawyer to … engage in conduct that is prejudicial to the administration of justice[.]"). Unlike Rule 8.4's other subsections that set forth prohibitions of specific conduct, Rule 8.4(d) is the only type of professional misconduct within the Rule where the consequence defines the violation. While the other provisions of Rule 8.4 consider specifically enumerated acts to be professional misconduct, Rule 8.4(d) only considers "conduct" to be professional misconduct when the action results in prejudice to the administration of justice. Thus, the Rule focuses on the effect of the conduct to determine whether it is a Rule 8.4(d) violation, rather than merely the conduct itself. While this might suggest that language of Rule 8.4(d) can be read broadly, it is critical to highlight that the provision does not state that it is misconduct for a lawyer to engage in **any** conduct that is prejudicial to the administration of justice. Chapter Eight of the Rules focuses on "maintaining the integrity of the profession." *See* Pa.R.P.C. Ch. Eight. To maintain the integrity of the profession, the Rules focus on regulating conduct that questions a lawyer's "honesty, trustworthiness or fitness" to practice law. *See* 8.3, cmt. 3 ("The duty to report involves only misconduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."); *see also* 8.4, cmt. 1 (noting that

only criminal conduct that reflects adversely on fitness to practice law, such as fraud, can be violative of the Rules). Thus, the Rules themselves limit the type of conduct that can lead to a violation of Rule 8.4(d). This is true for two reasons.

The first, and most obvious reason, is that another reading leads to unreasonable results. *See* 1 Pa.C.S. § 1922 (rule of interpretation that presumes that a result that is "absurd, impossible of execution or unreasonable" is not intended). There are types of conduct by a lawyer that can impact the administration of justice that do not reflect on the honesty, trustworthiness or fitness to practice law. For example, a lawyer negligently causes a motor vehicle collision with an official vehicle transporting a convicted felon to court for sentencing and as a result of the collision, the defendant escapes. The lawyer's negligent driving clearly prejudiced the administration of justice but just as clearly, that conduct does not call into question the lawyer's honesty, trustworthiness or fitness to practice law.

Second, Rule 8.4(d) is nestled within a broader Rule that describes conduct that is considered to be professional misconduct. In this context, the "conduct" referenced in Rule 8.4(d) is the conduct otherwise prohibited by Rule 8.4. Thus, in order to violate Rule 8.4(d), the otherwise proscribed conduct must also be prejudicial to the administration of justice.

In this regard, we note that it is a violation of Rule 8.4(a) to violate or attempt to violate the Rules of Professional Conduct. Thus, Rule 8.4(d) can be triggered by the violation of any of the Rules so long as a violation prejudiced the administration of justice.[12] A violation of Rule 8.4(d) must be charged in conjunction with another Rule

---

[12] The Hearing Committee's description of Rule 8.4(d) as a catch-all rule that may apply where several violations are found, is inaccurate in two respects. First, it is not a catch-all rule because it only applies where a violation of a Rule prejudices the administration of justice. Second, in appropriate circumstances, a single violation of a Rule of (continued…)

violation and a Rule 8.4(d) violation cannot be found if a lawyer has not otherwise engaged in conduct prohibited by the Rules. This aligns with a review of our jurisprudence, as we have not uncovered a case where an attorney was disciplined solely based on a Rule 8.4(d) violation.

In support of its position that Pisanchyn violated Rule 8.4(d), ODC argues that he "submitted and litigated an unsupported, vague and poorly reasoned fee petition, even though the district court gave him the opportunity to supplement it" and that this conduct set in motion a series of events that significantly inconvenienced the district court, wasted limited judicial resources, and negatively impacted the administration of justice. ODC's Reply Brief at 58-59. Pisanchyn's conduct in drafting and litigating the fee petition resulted in multiple charges of Rule violations. However, no violations have been sustained. Consequently, although flawed, Pisanchyn's conduct in drafting the fee petition and litigating it cannot serve as a basis for a Rule 8.4(d) violation.

Based on our case law, we also take issue with ODC's position that significantly inconveniencing the district court, wasting limited judicial resources, and "negatively" impacting the administration of justice is necessarily prejudicial to the administration of justice as contemplated by Rule 8.4(d).[13] Our case law establishes that the misconduct contemplated by Rule 8.4(d) arises when there is an attempt to interfere with the administration of justice through misrepresentation or other dishonest misuse of the legal system for improper means,[14] when an attorney actually undermines proceedings through

---

Professional Conduct is all that is necessary to trigger the application of Rule 8.4(d) if the violative conduct prejudiced the administration of justice.

[13] Given our conclusion that the absence of a separate Rule violation precludes a finding of a violation of Rule 8.4(d), we believe that the confusion surrounding the Rule's application stems from the lack of explication in our jurisprudence supporting previous determinations that Rule 8.4(d) has been violated.

[14] *See, e.g.*, *ODC v. Altman*, 228 A.3d 508 (Pa. 2020).

deception,[15] or when an attorney's conduct in violation of the Rules of Professional Conduct otherwise obstructs the court's functions in administering justice.[16]  The case of *ODC v. Baldwin*, 225 A.3d 817 (Pa. 2020) provides the most apt illustration of this lattermost category, when the conduct of an attorney directly prevents justice from being administered, even when the conduct was not dishonest or deceitful.

In *Baldwin*, ODC charged Cynthia Baldwin, the Vice-President, General Counsel, and Chief Legal Officer for Penn State, with violating, inter alia, Rule 8.4(d) in connection with her representation of Penn State and three of its administrators during grand jury proceedings related to child abuse allegations.  The three administrators were charged with multiple crimes based on their testimony before the grand jury.  It was later determined that Baldwin revealed confidential communications between herself and the three administrators, breached the attorney-client privilege, and did so by testifying against her clients.  This testimony was later determined to be inadmissible.  As a result, the Superior Court quashed various criminal charges against the three administrators. *Commonwealth v. Curley*, 131 A.3d 994 (Pa. Super. 2016); *Commonwealth v. Schultz*, 133 A.3d 294 (Pa. Super. 2016); *Commonwealth v. Spanier*, 132 A.3d 481 (Pa. Super. 2016).  In Baldwin's appeal from the findings of the Disciplinary Board, we concluded that her multiple violations of the Rules of Professional Conduct[17] resulted in a dismissal of certain charges against the three administrators, and the inability to prosecute these charges was directly attributed to her violations of the Rules of Professional Conduct.

---

[15]  *See, e.g.*, *ODC v. DiAngelus*, 907 A.2d 452 (Pa. 2006); *ODC v. Wrona*, 908 A.2d 1281, 1281 (Pa. 2006); *ODC v. Price*, 732 A.2d 599, 606 (Pa. 1999).

[16]  *See, e.g.*, *ODC v. Baldwin*, 225 A.3d 817 (Pa. 2020).

[17]  We concluded that she had violated Rules 1.1, 1.6, and 1.7 of the Pennsylvania Rules of Professional Conduct.  *See* Pa.R.P.C. 1.1 ("Competence"); 1.6 ("Confidentiality of Information"); 1.7 ("Conflict of Interest: Current Clients").

*Baldwin*, 225 A.3d at 856. Accordingly, we held that her conduct was prejudicial to the administration of justice in violation of Rule 8.4(d). *Id.*

*DiAngelus* involved deceptive conduct that undermined proceedings. DiAngelus represented a client who was charged with failure to maintain financial responsibility for her motor vehicle, 75 Pa.C.S. § 1786, and driving an unregistered vehicle, 75 Pa.C.S. § 1301. *DiAngelus*, 907 A.2d at 454. DiAngelus falsely represented to an assistant district attorney that the arresting officer agreed to withdraw the more serious financial responsibility charge in exchange for his client's guilty plea to the lesser unregistered vehicle charge. *Id.* Based on DiAngelus' misrepresentation, the Commonwealth agreed that it would withdraw the financial responsibility charge. *Id.* We explained that DiAngelus' misrepresentation was prejudicial to the administration of justice because the Commonwealth did not contest certain evidence presented by DiAngelus because the Commonwealth was willing to drop the more serious charge as a direct result of DiAngelus' misrepresentation.[18] *Id.* at 457-58.

ODC's reliance on *ODC v. Altman*, 228 A.3d 508 (Pa. 2020), is misplaced. In *Altman*, an attorney was disbarred for violating numerous Rules of Professional Conduct based on several instances of misconduct. Altman had sexual relations with his client, loaned his credit cards to his client in an attempt to keep her from informing his wife about the affair, filed a lawsuit against the client for manufactured legal fees, sought to prohibit the client from participating in or cooperating in any disciplinary proceedings against him and filed a protective order to prevent his wife from being deposed in a lawsuit filed against him by the same client. *Id.* at 510-11. In concluding that Altman violated Rule

---

[18] In addition to finding that DiAngelus violated Rule 8.4(d), we also determined that he violated Rules 4.1(a) and 8.4(c). *See* Pa.R.P.C. 4.1(a) (prohibiting a lawyer from knowingly "mak[ing] a false statement of material fact or law to a third person"); 8.4(c) (prohibiting a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation").

8.4(d), we stated that Altman filed a meritless action for legal fees against his client,[19] submitted false and misleading affidavits, and filed a meritless motion for a protective order in an attempt to prevent his wife from being deposed to obstruct another party's access to evidence.[20]

In the context of discussing *Altman*'s challenges to certain conclusions of the Disciplinary Board, we referred to the violations as those "related to misuse of the court system." *Altman*, 228 A.3d at 518. While the charges involved meritless filings before a magistrate district judge and then, again, in the Court of Common Pleas, these filings were not merely meritless in violation of Rule 3.1 ("Meritorious Claims and Contentions"). The filings contained misrepresentations in violation of Rule 8.4(c) prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation. Likewise, the failure to comply with a discovery order based on a baseless protective order request resulted in a violation of both Rule 3.1 and 3.4(a), which prohibits unlawful obstruction of another party's access to evidence. *Altman*, 228 A.3d at 518-19. Each of those violations served as the foundation for a Rule 8.4(d) violation.

Although we did not expound on the basis for our conclusions that this conduct, related to the misuse of the court system, resulted in violations of Rule 8.4(d), the lesson from *Altman* is that the administration of justice is prejudiced when a lawyer engages in deceitful and dishonest conduct in court filings and proceedings. In this context, whether the conduct actually interferes with the court function, is not determinative. The attempt to manipulate the outcome of a case or proceeding through dishonest conduct is sufficient

---

[19] According to the ODC's brief in that matter, Altman had filed an action for legal fees where he "reluctantly admitted" to double billing his client, and that he had never reviewed his own billing records until being cross-examined during the disciplinary hearing. ODC's Altman Brief at *13-*14.

[20] Although Altman was attempting to claim marital privilege in a civil lawsuit, his wife was identified as a party to the loan at issue in that lawsuit. *Altman*, 228 A.3d at 512.

to call into question the integrity of the profession. The administration of justice is dependent on the honesty and integrity of the lawyers who practice within the legal system. Because of the essential role of lawyers, the administration of justice has little tolerance for manipulation by lawyers who violate the rule of conduct that prohibit deceit, fraud, dishonesty and misrepresentations, generally and by implication, in court filings and proceedings.

We express no opinion here on whether there would have been a finding of a Rule 8.4(d) violation in any one of the three separate instances of misconduct in *Altman* without the totality of the misuse of the legal system presented in the case. For example, the attempt to obstruct another party's access to evidence did not involve a violation of a Rule prohibiting dishonest conduct but it was part of a course of dishonest efforts to misuse the legal system. We draw insight from the comment to Rule 8.4 which discusses the kind of illegal conduct that is violative of subsection (b) involving criminal acts: "… a pattern of repeated offenses, even those of minor significance when considered separately, can indicate indifference to legal obligation." Pa.R.P.C. 8.4, cmt. 2. The same is true of repetitive misconduct indicating an indifference to the legal system.

Comparing the facts of this matter with our case law here, unlike *Baldwin*, the trial court was not prevented from adjudicating the fee petition and determining whether the fees should be awarded. Even more importantly, Pisanchyn was not charged with any violation of the Rules prohibiting deceit, fraud or misrepresentation. There was no indication that he sought to mislead the federal district court in the fee petition proceeding. Although the fee petition may have required the trial court to "expend considerable time and judicial resources," *see* ODC's Brief at 59, this does not rise to the level of interference with or thwarting the administration of justice. Although tedious, justice was administered. This differs from *Baldwin* and *DiAngelus* where the attorneys' conduct

directly thwarted the administration of justice. The expense of time and judicial resources in a court proceeding does not equate with the type of prejudice that substantively affects the outcome of the proceedings, as was the case in *Baldwin* and *DiAngelus*.[21]

We conclude Pisanchyn did not violate Rule 8.4(d). First, there has been no finding of a violation of any Rule of Professional Conduct, so there was no basis to conclude that he engaged in conduct that could prejudice the administration of justice. While the analysis could end here, given our request for briefing on this issue, we conclude that, under the circumstances, inconvenience to the court as a result of an unnecessarily time-consuming review of a defective petition is not the prejudice to the administration of justice as contemplated by Rule 8.4(d). Absent conduct violative of the rules prohibiting deceit, dishonesty, fraud or misrepresentations, a lawyer cannot violate Rule 8.4(d) unless the violation of the Rules results in the actual prejudice by thwarting or interfering with the administration of justice.

## IV. Conclusion

We find that neither Rule 1.5(a) nor 8.4(d) of the Pennsylvania Rules of Professional Conduct apply under the circumstances of this appeal. Accordingly, the decision of the Disciplinary Board is reversed and the Petition for Discipline is dismissed.

Justices Dougherty, Mundy and Brobson join the opinion.

---

[21] ODC relies on *ODC v. DiClaudio*, No. 71 DB 2015 for the proposition that "[c]onduct is prejudicial to the administration of justice when it unnecessarily expends the limited time and resources of the court system." ODC's at 61 (citing *DiClaudio*, No. 71 DB 2015). We are not bound by the findings and recommendations contained in the Disciplinary Board's Reports. *Cappuccio*, 48 A.3d at 1236. Similarly, our issuance of per curiam orders based on these reports does not constitute an endorsement of any legal conclusion or reasoning contained therein. *Cagey v. Commonwealth*, 179 A.3d 458, 467 (Pa. 2018) (explaining that per curiam orders are not precedential). Moreover, the decision in *DiClaudio* was the result of a joint petition for discipline on consent, pursuant to Pa.R.D.E. 215(d). *ODC v. DiClaudio*, No. 71 DB 2015. Thus, there was no challenge to Rule 8.4(d)'s application to the misconduct alleged.

Chief Justice Todd and Justices Wecht and McCaffery did not participate in the consideration or decision of this matter.